IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES WILSON, ANTHONY CERECERES, MILE MANOJLOVIC, JAMES HICKEY, JOHN MCGUIRE | ) ) ) ) | |
| Plaintiffs, | ) ) ) | No. 12 C 06391 |
| v. | ) ) ) | Judge John J. Tharp, Jr. |
| CITY OF CHICAGO, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiffs in this case, police officers working for the Chicago Police Department ("CPD"), bring federal §§ 1983, 1985, and 1986 claims and a state law civil conspiracy claim against the City of Chicago. The plaintiffs claim that CPD supervisors and employees improperly assisted other Chicago police officers on an advancement test administered in 2005 (the "Test") by impermissibly forwarding them questions and answers for the Test—essentially, they claim that CPD supervisors, including the Superintendent of Police, allowed and encouraged certain other police officers to cheat on the Test. The plaintiffs claim that this deprived them, without due process, of their property interest in the opportunity to be promoted to sergeant. The City of Chicago moves to dismiss, and for the reasons explained below, the motion is granted with prejudice as to the plaintiffs' federal claims. The Court declines to exercise supplemental jurisdiction over the pendent state law civil conspiracy claim, and that claim is therefore dismissed without prejudice.

I.      **Factual Background**[1]

The plaintiffs are employed by the CPD, a department of the City of Chicago. The CPD is responsible for promoting its officers. One of the factors the CPD considers when deciding whether to promote an officer to sergeant is the officer's "seniority." According to the plaintiffs, seniority is determined in part on the score the officer obtained on the two-part Test, which consists of multiple choice and essay questions. In 2005, prior to testing, sergeant Kevin Oakes received a copy of the Test in the CPD office from the company that administered the exams. Oakes then forwarded the Test to his supervisor, Deputy Superintendent Dana Starks, as well as to Superintendent Phil Cline and head of personnel William Powers. The plaintiffs allege, upon information and belief, that Cline, Starks, and Powers then forwarded the Test to select CPD officers who later took the Test. The plaintiffs additionally allege that an unnamed CPD supervisor gave Matt Kasput, a police officer with the CPD, key words for an answer to one of the essay questions on the second part of the Test.

None of the plaintiffs received any questions or answers prior to taking the Test in 2005, and they were placed on the sergeants list based on the Test scores they obtained without improper assistance. They allege that some of the individuals with unfair access to Test questions and answers were promoted after taking the Test. In July 2012, the CPD promoted additional officers to sergeant in part because of their Test scores and seniority. The CPD has not promoted any of the plaintiffs to sergeant.

---

[1] In reviewing a motion to dismiss, the Court accepts the plaintiffs' well-pleaded factual allegations as true and draws all reasonable inferences in their favor. *Gessert v. United States*, 703 F.3d 1028, 1033 (7th Cir. 2013). The facts recited here are taken from the plaintiffs' amended complaint and are presumed to be true only for purposes of evaluating this motion.

II.     Analysis

      **A. The Plaintiffs Have Not Alleged a Constitutionally Protected Property Right Under § 1983.**

To successfully assert a violation of 42 U.S.C. § 1983, plaintiffs must allege: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that this conduct deprived the plaintiffs of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Padula v. Leimbach*, 656 F.3d 595, 600 (7th Cir. 2011). Section 1983 "does not create substantive rights; rather, it is a means for vindicating federal rights conferred elsewhere." *Id.* (internal quotation omitted). Here, the plaintiffs allege that the City of Chicago wrongfully deprived them of "a property interest in their jobs" without due process of law.[2] Resp. Br. (Dkt. 21) at 3. The plaintiffs correctly argue that police officers have a property interest in their continued employment with the CPD. *See Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004). But the plaintiffs do not claim that the City has deprived them of the opportunity to continue their employment with the CPD. Rather, they allege that "they were not given the opportunity to be promoted to sergeant." Resp. Br. (Dkt. 21) at 4. The Seventh Circuit has repeatedly held that public employees, including Chicago police officers specifically, do not have a property interest in the opportunity to obtain a promotion. *See Moore*

---

[2] To the extent that the plaintiffs intended to assert an equal protection claim under § 1983, that claim fails. "To state a *Monell* claim against the City for violation of [the plaintiffs'] right to equal protection, [the plaintiffs are] required to plead factual content that allows the court to draw the reasonable inference that the City maintained a policy, custom, or practice of intentional discrimination against a class of persons to which [the plaintiffs] belonged." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotations omitted). But the plaintiffs cannot adequately plead that they belong to any identifiable "class of persons." Rather, the plaintiffs' "class" is defined only in relation to the CPD's conduct—in other words, the plaintiffs are members of the "class" of police officers with whom CPD did not share answers to the Test. Defining a class based on the plaintiffs' status as victims of allegedly wrongful conduct is impermissible in the equal protection context. *See McDorman v. Smith*, 437 F. Supp. 2d 768, 776 (N.D. Ill. 2006).

*v. Muncie Police and Fire Merit Comm'n*, 312 F.3d 322, 327 (7th Cir. 2002) ("[A]n employee has no property interest in a *prospective* promotion, even when placed on an eligibility or ranking list.") (emphasis in original); *United States v. City of Chicago*, 869 F.2d 1033, 1036-37 (7th Cir. 1989) (finding that because Illinois law does not create an entitlement to promotion, Chicago police officer had no property interest in having an opportunity for promotion or a place on a promotion roster); *Bigby v. City of Chicago*, 766 F.2d 1053, 1056 (7th Cir. 1985) (finding an "expectation that the examinations used for promotion [of Chicago police officers] will be fair but . . . not so firm and definite an expectation as to be 'property' in a constitutional sense."). This is because a police officer's promotion to higher rank is not guaranteed or protected by law. *See Bigby*, 766 F.2d at 1056. Even if other officers had not received an unfair advantage on the Test, each of the plaintiffs still might not have been promoted. According to the complaint, the Test was only one of a number of factors used to determine an officer's "seniority," and seniority was only one criterion among many considered in the promotion process. Am. Cmplt. (Dkt. 14) at ¶¶ 8-9. Therefore, the plaintiffs cannot show that they would have been promoted but for the misconduct that allegedly took place with regards to the Test. Consequently, they have not shown a constitutionally protected property interest in being promoted, or in having an opportunity to be promoted and their § 1983 claim fails. *See Moore*, 312 F.3d at 328.[3]

---

[3] The City of Chicago also argues that the plaintiffs failed to allege a basis for municipal liability as is required to state a *Monell* claim under § 1983. In view of the plaintiffs' failure to allege the deprivation of a property right, it is not necessary to address that argument definitively. The Court notes, however, that the plaintiffs have alleged that Superintendent Cline took part in the allegedly wrongful conduct, and "[o]ne way in which a municipality may be liable for a section 1983 violation is if 'an individual with final policymaking authority for the municipality (on the subject in question) caused the constitutional deprivation.'" *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 987 (7th Cir. 2013) (quoting *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 674 (7th Cir. 2009)). Because of Superintendent Cline's presumably broad authority over CPD policy, it is not immediately apparent that the plaintiffs could not establish municipal liability on

### B. The Plaintiffs Fail to State a Claim Under § 1985.

Next, the plaintiffs claim that the City of Chicago violated 42 U.S.C. § 1985(3), alleging that the City of Chicago conspired to deprive the plaintiffs of their opportunity to be promoted. In the context of a case like this, to successfully state a claim under § 1985(3), a plaintiff must plausibly allege that two or more persons conspired to deprive "any person or class of persons of the equal protection of the laws." *Williams v. St. Joseph Hosp.*, 629 F.2d 448, 451 (7th Cir. 1980). "The function of § 1985(3) is to permit recovery from a private actor who has conspired with state actors." *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009) (citing *Dennis v. Sparks*, 449 U.S. 24 (1980)). In cases where "[a]ll defendants are state actors, . . . a § 1985(3) claim does not add anything except needless complexity." *Id.* Here, the only defendant, the City of Chicago, is a state actor. Therefore, there is no need for the plaintiffs to invoke the statute to impose liability on a non-state actor.

Further, § 1985(3) requires plaintiffs to "show some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirators' actions, and that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002). The plaintiffs have not alleged any sort of racial or other class-based animus or discrimination whatsoever. Rather, they have alleged only that they are among a group of Chicago police officers who did not receive improper assistance on the 2005 Test, while other officers did receive assistance. The plaintiffs also have not alleged their own racial backgrounds, nor the racial backgrounds of the other police officers who received the Test questions and answers. Because the plaintiffs have failed to allege

---

the basis of Superintendent Cline's alleged participation in this scheme—*if* it had deprived them of a property right.

any class-based invidious discriminatory animus, and because their § 1985 claim is superfluous in any event, the City of Chicago's motion to dismiss is granted with respect to Count II of the Amended Complaint.

### C.  The Plaintiffs' § 1986 Claim Also Fails.

A successful § 1986 claim provides a cause of action against "[e]very person who, having knowledge that any of the wrongs conspired to be done, and *mentioned in section 1985* . . . , are about to be committed, and having power to prevent or aid the commission . . . , neglects or refuses to do so, [and] such wrongful act [is] committed." 42 U.S.C. § 1986 (emphasis added). Therefore, a successful § 1986 claim must be predicated upon a valid § 1985 claim. *See Williams*, 629 F.2d at 452. The plaintiffs have failed to state a claim under § 1985 as previously explained, so they have no basis for proceeding under § 1986. The City of Chicago's motion to dismiss is granted as to Count III of the Amended Complaint.

### D.  Supplemental Jurisdiction Declined Over the Pendent State Law Claim.

Finally, the plaintiffs assert civil conspiracy claim against the City of Chicago under Illinois state law. Having already dismissed the federal claims which give rise to original jurisdiction in this case, the Court chooses to exercise its discretion to decline supplemental jurisdiction over the pendent state law claim. *See* 28 U.S.C. § 1367(c)(3). Accordingly, the plaintiffs' state law claim is dismissed without prejudice for lack of subject matter jurisdiction.

\*     \*     \*

For the reasons set forth above, the City of Chicago's motion to dismiss is granted, and the plaintiffs' federal claims (Counts I-III) are dismissed with prejudice. The plaintiffs' state law civil conspiracy claim (Count IV) is dismissed without prejudice.

Entered: August 15, 2013

_____
John J. Tharp, Jr.
United States District Judge